IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| JOSEPH HENRY MCREED, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CV 113-121 |
| | ) | (Formerly CR 111-302) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner, an inmate at the Federal Correctional Institution in Morgantown, West Virginia, has filed with this Court a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence.[1] This case is now before the Court on Respondent's motion to dismiss Petitioner's § 2255 motion. (Doc. no. 7.) Petitioner has failed to respond to Respondent's motion, and the Court therefore considers the motion unopposed. See Loc. R. 7.5. For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** that the motion to dismiss be **GRANTED**, that Petitioner's § 2255 motion be **DISMISSED**, and that this civil action be **CLOSED**.

## I. BACKGROUND

On August 2, 2011, Petitioner was indicted in Count One of possession of

---

[1] Petitioner requested permission to amend his § 2255 motion (doc. no. 5), and on August 21, 2013, the Court entered an Order in which it stated that the amendment would be read in conjunction with the original motion (doc. no. 6).

firearms and ammunition by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), with an armed career criminal enhancement under § 924(e), and in Count Two of possession with intent to distribute marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D). United States v. McReed, CR 111-302, doc. no. 1 (S.D. Ga. Aug. 2, 2011) (hereinafter "CR 111-302"). Petitioner was represented by retained counsel Victor Hawk, except during his guilty plea hearing, when he was represented by Reid Sanders, a member of Mr. Hawk's firm. (CR 111-302, doc. no. 78, pp. 9-10.)

On May 17, 2012, Petitioner pleaded guilty to Count One, possession of firearms and ammunition by a felon, but without the statutory enhancement of § 924(e), and the government agreed to dismiss Count Two, possession with intent to distribute marijuana. (Id., doc. nos. 60, 61.) Petitioner's plea agreement included a broad appeal and collateral attack waiver provision that stated in relevant part:

> [T]o the maximum extent permitted by federal law, the defendant voluntarily and expressly waives the right to appeal the conviction and sentence and the right to collaterally attack the conviction and sentence in any post-conviction proceeding, including a § 2255 proceeding, on any ground, except that: the defendant may file a direct appeal of his sentence if it exceeds the statutory maximum; and the defendant may file a direct appeal of his sentence if, by variance or upward departure, the sentence is higher than the advisory sentencing guideline range as found by the sentencing court.

(Id., doc. no. 60, p. 4.) By signing the plea agreement, Petitioner also attested that he understood:

> [T]he U.S. Probation Office will consider all of defendant's conduct related to the offense to which he is pleading, as well as the defendant's criminal history, and that these facts will be considered by the Court in determining the defendant's sentence. The defendant understands that the offense level and criminal history category determined by the United States Probation Office and the Court may differ from that estimated or

2

projected by defendant's counsel or the United States Attorney.

(Id. at 6.) The agreement also stated that, although the government would dismiss Count Two, "the defendant understands and agrees that the Court may consider conduct in said counts [sic] as relevant conduct for purposes of determining the defendant's sentencing range pursuant to Section 1B1.3 of the Sentencing Guidelines." (Id. at 2.) By signing the plea agreement Petitioner attested that he had read and understood the plea agreement and that it accurately set forth the terms and conditions of his agreement with the government. (Id. at 10.)

At the guilty plea hearing held on May 17, 2012, United States District Judge J. Randal Hall reviewed the counts in the indictment. (Id., doc. no. 78, pp. 5-7.) Petitioner testified under oath that he understood what he was being charged with, had reviewed the indictment with his attorney, and had as much time to speak with his attorney about the charges as he wanted. (Id. at 7.) Judge Hall then questioned Petitioner to determine whether he was competent to plead guilty. (Id. at 7-9.) Petitioner also testified that he was satisfied with the assistance he had received from both Mr. Hawk and Mr. Sanders. (Id. at 9-10.)

Judge Hall next explained the rights Petitioner would waive by pleading guilty, and Petitioner affirmed he understood those rights. (Id. at 10-12.) Petitioner further testified that he had read and discussed the plea agreement with his attorney before he signed it, his attorney was authorized to negotiate the plea agreement for him, and he understood that he was agreeing that the facts contained in the agreement were true. (Id. at 12-13.) Judge Hall reminded Petitioner that, even though the government had agreed

to dismiss Count Two of the indictment, "the Court can consider all of your conduct in this case as relevant conduct for purposes of determining the sentencing range under the sentencing guidelines." (Id. at 15.) In addition, Judge Hall reviewed the appeal and collateral attack waiver as follows:

> Finally, I note that you've agreed to waive your rights to appeal your conviction and sentence both directly and indirectly through a post-conviction proceeding, except that if the Court should sentence you to a sentence that is higher than the statutory maximum, or is higher than the sentencing guideline range, or in the event that the Government should for some reason decide to appeal your final sentence then, in any of those three events, you would have a right to directly appeal your sentence. Otherwise, unless one of those three events occurs, Mr. McReed, by signing this plea agreement, you are, in fact, giving up your rights to appeal. Is this what you agreed to?

(Id. at 16.) Petitioner answered, "Yes, sir," affirming that he understood the explanation of the plea agreement, including the appeal and collateral attack waiver. (Id.) Petitioner also affirmed that, other than the promises the government made in the plea agreement, no one had made him any promises in order to get him to plead guilty. (Id. at 13, 16.)

Judge Hall then explained that the maximum penalties for the crime to which Petitioner was pleading guilty were a term of ten years of incarceration and a fine of up to $250,000, with up to three years of supervised release. (Id. at 16-17.) Petitioner affirmed that he understood the maximum penalties. (Id. at 17.) Judge Hall explained the applicability and advisory nature of the United States Sentencing Guidelines ("U.S.S.G."), and that a probation officer would prepare a Presentence Investigation Report ("PSI") which he would rely upon to determine Petitioner's sentence. (Id. at 17-19.) When asked if he understood, Petitioner responded "Yes, sir," and when asked if he had any questions about sentencing he responded "No, sir." (Id. at 19.) Judge Hall then

4

asked, "Did anyone promise, predict, or make a prophecy or representation to you that you will receive a specific sentence in this case?" (Id.) Petitioner responded, "No, sir." (Id.)

Next, Judge Hall reviewed the elements of the charge to which Petitioner was pleading guilty and explained that the government would have to prove those elements beyond a reasonable doubt to obtain a conviction. (Id. at 19-20.) When asked by Judge Hall if he admitted that his conduct satisfied such elements, Petitioner responded, "Yes, sir." (Id. at 20.) Following the government witness' presentation of a factual basis for the guilty plea, Petitioner agreed with the testimony and affirmed that he had committed the crime of possession of firearms and ammunition by a felon. (Id. at 23.)

Judge Hall asked Petitioner if he still wanted to plead guilty to Count One of the indictment, to which he responded, "Yes, sir. " (Id. at 23) Judge Hall then asked if he was pleading guilty because he was, in fact, guilty of the crime charged in Count One, to which Petitioner responded, "Yes, sir." (Id.) Thus, Judge Hall found that Petitioner was competent, that he fully understood the charges against him, and that his decision to plead guilty was knowing, voluntary, "and not the result of any force, pressure, threats, or promises other than the promises made by the Government in the plea agreement." (Id. at 24.) Accordingly, Judge Hall found Petitioner guilty of Count One, possession of firearms and ammunition by a felon. (Id.)

Petitioner objected to the pre-sentence report. (Id., doc. no. 84, p. 4.) Specifically, Petitioner objected to the recommended sentencing enhancement under U.S.S.G. § 2K2.1(b)(6)(B), which provides for a four level increase if the defendant used

5

or possessed a firearm in connection with another felony offense. PSI ¶ 20. The enhancement was recommended because "[t]he defendant possessed two firearms in connection with the felony offenses of . . . distribution of marihuana; . . . possession of marihuana with intent to distribute; . . . and possession of cocaine. (Id.) Petitioner argued that the enhancement did not apply, because the weapons were not the type used in furtherance of drug sales, nor were they in a location that was accessible to Petitioner during any drug sales. (CR 111-302, doc. no. 84, pp. 4-5, 27-28.)

Taking into consideration the arguments of counsel for both sides, as well as the testimony of Petitioner's wife and the investigating federal agent, Judge Hall found that the weapons "were found in close proximity to the drugs that were discovered, and the fact that these weapons were in close proximity indicates that they did have the potential of facilitating the sale of drugs, another felony offense, and therefore the application of the enhancement under 2K2.1(b)(6)(B) is appropriate." (Id. at 33-34.) Accordingly, and consistent with the pre-sentence report, Judge Hall found that Petitioner's total offense level was 21, which included the aforementioned four level enhancement and a full three level reduction for acceptance of responsibility. (Id. at 34.) Judge Hall also agreed with the pre-sentence report's classification of Petitioner as a criminal history category of II, and that the result was an advisory sentencing guidelines range of 41 to 51 months of imprisonment, one to three years of supervised release, a $7,500 to $75,000 fine, and a $100 special assessment. (Id.) Judge Hall sentenced Petitioner to a 48-month term of imprisonment, three years of supervised release, and a $100 special assessment. (Id. at 40-42; doc. no. 68.) Judge Hall also reiterated at the sentencing hearing that Petitioner

6

had waived the right to appeal or attack the sentence in any post-conviction proceeding. (Id., doc. no. 84, p. 43.) In keeping with the terms of the plea agreement, Petitioner did not challenge his conviction or sentence on direct appeal.

Petitioner then timely filed the instant § 2255 motion, in which he raises three grounds for relief based on ineffective assistance of counsel. (Doc. nos. 1, 2.) In Ground One, Petitioner states that he received ineffective assistance of counsel, but merely states the legal standard without any factual analysis, supporting argument, or conclusion. (See Doc. no. 2, pp. 7-8.) In Ground Two, Petitioner claims his counsel was ineffective during plea negotiations for failing to explain that (1) he could still receive a sentence enhancement under U.S.S.G. § 2K2.1(b)(6)(B) for use or possession of a firearm in connection with another felony offense, even though (2) the § 924(e) statutory armed career criminal enhancement charged in the indictment would be dismissed. (Id. at 8.) In Ground Three, Petitioner argues he received ineffective assistance of counsel at sentencing because his attorney failed to effectively argue against the U.S.S.G. § 2K2.1(b)(6)(B) sentence enhancement.[2] (Id. at 9.) In Ground Four, Petitioner claims ineffective assistance of counsel during sentencing due to his attorney's failure to accompany him to an interview with the probation officer preparing the pre-sentence report. (Doc. no. 5.)

Petitioner requests that his conviction be vacated and his case remanded for resentencing, or in the alternative that an evidentiary hearing be held. (Doc. no. 2, p. 15.)

---

[2] Petitioner asserted a portion of Ground Three by way of an "affidavit." (Doc. no. 3.)

7

In its motion to dismiss, Respondent contends that Petitioner's § 2255 motion should be dismissed because (1) his grounds claiming ineffective assistance of counsel at sentencing are barred by the collateral attack waiver in his written plea agreement, and (2) his remaining ground claiming ineffective assistance of counsel during plea negotiations fails on the merits because Petitioner's guilty plea was knowing and voluntary. (Doc. no. 7.)

## II. DISCUSSION

### A. There is No Need for an Evidentiary Hearing.

With regard to Petitioner's request for a hearing, the Eleventh Circuit has recognized that an evidentiary hearing "is often required for development of an adequate record" for ineffective assistance claims. Vick v. United States, 730 F.2d 707, 708 (11th Cir. 1984). Nonetheless, this general rule does not require the Court to hold an evidentiary hearing every time an ineffective assistance of counsel claim is raised. Id. Stated another way, "A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations. Nor is a hearing required where the petitioner's allegations are affirmatively contradicted in the record." Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989). Moreover, a petitioner is not entitled to an evidentiary hearing where he asserts only conclusory allegations. Lynn v. United States, 365 F.3d 1225, 1238-39 (11th Cir. 2004); see also Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (noting that petitioner is not entitled to an evidentiary hearing if his claims "are merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible").

As described in detail below, the Court finds that Petitioner's claims are barred from review, lack merit as a matter of law, or are otherwise affirmatively contradicted by the record. Thus, no evidentiary hearing is necessary in this case, and Petitioner's request for one should be denied.

**B.     Petitioner's Claims in Grounds Three and Four for Ineffective Assistance of Counsel During Sentencing Are Barred by the Collateral Attack Waiver.**

It is well settled that a waiver of the right to collaterally attack a sentence is only enforceable if the waiver is knowing and voluntary. United States v. Weaver, 275 F.3d 1320, 1333 (11th Cir. 2001); United States v. Bushert, 997 F.2d 1343, 1350 (11th Cir. 1993). "To establish the waiver's validity, the government must show either that (1) the district court specifically questioned the defendant about the provision during the plea colloquy, or (2) it is manifestly clear from the record that the defendant fully understood the significance of the waiver." Weaver, 275 F.3d at 1333. If the government meets this burden, Petitioner's grounds for relief based on ineffective assistance of counsel during sentencing are barred from review. See United States v. Pease, 240 F.3d 938, 942 (11th Cir. 2001) (*per curiam*) (enforcing waiver provision where defendant was specifically questioned during plea proceedings about waiver); United States v. Howle, 166 F.3d 1166, 1168-69 (11th Cir. 1999); United States v. Benitez-Zapata, 131 F.3d 1444, 1146-47 (11th Cir. 1997).

Here, Respondent has demonstrated the existence of a valid collateral attack waiver. The plea agreement signed and verified by Petitioner fully set forth that, as a condition of his guilty plea, he was waiving any right to collateral attack of his sentence

or the knowing and voluntary nature of his guilty plea. (See CR 111-302, doc. no. 60, p. 4 ("[T]o the maximum extent permitted by federal law, the defendant voluntarily and expressly waives the right to appeal the conviction and sentence and the right to collaterally attack the conviction and sentence in any post-conviction proceeding, including a § 2255 proceeding . . . .").) Furthermore, Judge Hall thoroughly went over Petitioner's plea agreement during the plea colloquy, specifically reviewing the waiver provision. (Id., doc. no. 78, p. 16.) After Judge Hall concluded his review of the plea agreement, Petitioner acknowledged that he understood and agreed with the terms of the plea agreement as explained by Judge Hall. (Id.) Therefore, the record before the Court shows that Judge Hall specifically questioned Petitioner about the waiver provision, and that Petitioner fully understood its significance such that the collateral attack waiver was knowing and voluntary. Weaver, 275 F.3d at 1333.

Certain ineffective assistance of counsel claims can survive a valid collateral attack waiver, but "only when the claimed assistance directly affected the validity of that waiver or the plea itself." Williams v. United States, 396 F.3d 1340, 1342 n.2 (11th Cir. 2005) (quoting United States v. White, 307 F.3d 506, 508-09 (5th Cir. 2002)). Applying this principle, the Eleventh Circuit concluded in Williams that the petitioner's ineffective assistance of counsel claims concerning his counsel's representation during sentencing were covered by the collateral attack waiver in the plea agreement, as the claims "[did] not concern representation relating to the validity of the plea or waiver." See id.

Here, Petitioner claims in Ground Three that his counsel provided ineffective assistance at sentencing by failing to effectively argue against him receiving a sentence

enhancement pursuant to U.S.S.G. § 2K2.1(b)(6)(B). (Doc. no. 2, pp. 9-15.) Petitioner further argues that his counsel was ineffective for failing to raise specific arguments, present certain evidence, and seek a "low or mid range sentence." (Doc. no. 3, pp. 1-2.) In Ground Four, Petitioner claims his counsel was ineffective at sentencing for failing to accompany him to his probation interview to discuss what facts would become part of the PSI. (Doc. no. 5, p. 1.) Because all of these alleged failures relate to the performance of Petitioner's counsel in connection with his sentencing, they do not call into question the validity of Petitioner's guilty plea or the collateral attack waiver, and are thus barred by the collateral attack waiver. Williams, 396 F.3d at 1342 n.2. Therefore, Ground Three of Petitioner's § 2255 motion and Ground Four, raised in the amendment, are barred.

Notwithstanding the above analysis, the collateral attack waiver does not bar Ground Two, in which Petitioner alleges his counsel was ineffective during plea negotiations. (See doc. no. 2, pp. 8-9.) The Eleventh Circuit recognizes that "there may be a distinction between a § 2255 claim of ineffective assistance in entering or negotiating the plea versus a claim of ineffectiveness at sentencing or a claim challenging the validity of the plea or agreement." Williams, 396 F.3d at 1342; see also Vaca-Ortiz v. United States, 320 F. Supp.2d 1362, 1365 (N.D. Ga. 2004) ("[T]he court notes that a criminal defendant could not waive the right to bring a claim for ineffective assistance of counsel in which he alleges ineffectiveness at the time he was entering the plea or ineffectiveness related to advice he received regarding the waiver."). This is so because ineffective assistance of counsel in entering the plea "would require a finding that the plea was not entered knowingly and voluntarily, which would in turn mean that a court

could not enforce a waiver contained within that plea agreement." Vaca-Ortiz, 320 F. Supp.2d at 1365 (citing Bushert, 997 F.2d at 1350-51).

  **C. Petitioner's Claim in Ground Two that He Received Ineffective Assistance of Counsel During Plea Negotiations Is Without Merit.**

    1. **Under Strickland v. Washington,[3] Petitioner Bears a Heavy Burden on Ineffective Assistance of Counsel Claims.**

Ineffective assistance of counsel claims are subject to the two-part test enunciated in Strickland. Massaro v. United States, 538 U.S. 500, 505 (2003). Under the first prong, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. In this regard, "[a] petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions." Hagins v. United States, 267 F.3d 1202, 1204-05 (11th Cir. 2001). Strategic decisions are entitled to a "heavy measure of deference." Strickland, 466 U.S. at 691. "Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted). "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer . . . could have acted, in the circumstances, as [trial] counsel acted . . . ." Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) (*en banc*).

A court, however, "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the

---

  [3]Strickland v. Washington, 466 U.S. 688 (1984).

alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Smith v. Wainwright, 777 F.2d 609, 616 (11th Cir. 1985); see Brooks v. Comm'r, Ala. Dep't of Corr., 719 F.3d 1292, 1301 (11th Cir. 2013). Under the prejudice prong of Strickland, the petitioner must show that there "is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Brooks, 719 F.3d at 1300 (quoting Strickland, 466 U.S. at 694) (internal citation omitted). As the Eleventh Circuit has ruled, an affirmative showing of prejudice that would undermine the results of the proceedings is necessary because "'attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. That the errors had some conceivable effect on the outcome of the proceeding' is insufficient to show prejudice." Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (citations omitted).

Moreover, in the context of a guilty plea, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); Stephens v. Sec'y, Fla. Dep't of Corr., 678 F.3d 1219, 1225 (11th Cir. 2012) (*per curiam*) cert. denied, 133 S. Ct. 484 (2012). In assessing whether a habeas petitioner has met this standard, the Supreme Court has emphasized the "fundamental interest in the finality of guilty pleas." Hill, 474 U.S. at 58. Therefore, Petitioner must show both that counsel's

representation fell below an objective standard of reasonableness, *and* that there is a reasonable probability that but for counsel's errors, he would have insisted on going to trial. Id. at 56-59.

### 2. Petitioner Has Not Established Entitlement to Relief Based on Ineffective Assistance of Counsel in Ground Two.

Petitioner claims his attorney told him he would not receive the statutory career armed criminal sentence enhancement pursuant to § 924(e), but never explained to him that he could still receive a sentence enhancement pursuant to U.S.S.G. § 2K2.1(b)(6)(B) for possessing the firearms in connection with drug sales. (Doc. no. 2, pp. 8-9.) He further alleges his understanding that he would not receive a sentence enhancement "was a significant and material component of [his] determination to plead guilty." (Id. at 8.)

Petitioner's assertion that he was ignorant of the possibility of such an enhancement is belied by the plea agreement and his testimony during the plea hearing. Petitioner signed and verified the plea agreement, which states "the defendant understands and agrees that the Court may consider conduct in [the dismissed count] as relevant conduct for purposes of determining the defendant's sentencing range." (CR 111-302, doc. no. 60, p. 2.) The plea agreement also states, "[t]he defendant further advises the Court that the defendant understands that the U.S. Probation Office will consider all of defendant's conduct related to the offense to which he is pleading, as well as the defendant's criminal history, and that these facts will be considered by the Court in determining the defendant's sentence." (Id. at 6 (emphasis in original).)

Moreover, during the change of plea hearing, Judge Hall said to the Petitioner "please understand—and you've certainly stated that you understand this in the plea

14

agreement, but I am going to reinforce that—that the Court can consider all of your conduct in this case as relevant conduct for purposes of determining the sentencing range under the sentencing guidelines." (Id., doc. no. 78, p. 15.) Petitioner affirmed that he had agreed to such terms, and that no one had promised him anything other than what the government stated in the agreement. (Id. at 15-16.) Petitioner also affirmed that no one had promised, predicted, or made a prophecy or representation to him that he would receive a specific sentence. (Id. at 19.) As such, even if his attorney failed to inform him that he could receive a sentence enhancement under the guidelines, Petitioner was made aware that all of his conduct related to both the weapons and drug trafficking offenses charged in the indictment would be used in determining his sentence, and that dismissal of the statutory sentence enhancement from the indictment did not preclude other enhancements based on the U.S.S.G.[4]

"[S]olemn declarations in open court [at a guilty plea hearing] carry a strong presumption of verity" and "constitute a formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 74 (1977); see also United States v. Stitzer, 785 F.2d 1506, 1514 n.4 (11th Cir. 1986) ("[I]f the Rule 11 plea-taking procedure

---

[4] Courts have consistently held that conduct forming the basis of counts for which the defendant is acquitted, as well as counts dismissed from the indictment pursuant to a plea agreement, is relevant conduct for sentencing. See United States v. Watts, 519 U.S. 148, 149-53 (1997) (holding that sentencing court may consider facts relating to other charges, even ones of which defendant has been acquitted); United States v. Averi, 992 F.2d 765, 766 (1991) (same); see also United States v. Kennedy, 326 F. App'x 509, 511 (11th Cir. 2009) (*per curiam*) (relevant conduct for sentencing included quantities of drugs that were subject of dismissed counts of indictment); United States v. Karam, 37 F.3d 1280, 1285 (8th Cir. 1994) ("a sentencing court may consider, as relevant conduct under U.S.S.G. § 1B1.3, the conduct charged in dismissed counts").

is careful and detailed, the defendant will not later be heard to contend that he swore falsely.") Given Petitioner's sworn testimony, he cannot now claim that he entered his plea without understanding the consequences or how he would be sentenced afterward. Moriarty, 429 F.3d at 1019.

Furthermore, so long as the Court correctly advised Petitioner at the plea hearing of the minimum and maximum penalties he faced as a result of pleading guilty, he cannot establish prejudice simply by alleging that counsel gave him erroneous advice about the sentence he might receive or the possibility for enhancements under the sentencing guidelines. See United States v. Wilson, 245 F. App'x 10, 11-12 (11th Cir. 2007) (*per curiam*) (no prejudice where counsel's deficient advice about possible sentencing implications was "cured" by district court, which explained "the consequences of the plea agreement, range of punishment, and sentencing contingencies before accepting [the] guilty plea"); see also United States v. Shedrick, 493 F.3d 292, 300 (3d Cir. 2007) (district court correctly denied § 2255 claim that counsel was ineffective for failing to advise petitioner of "the potential for an enhancement or upward departure" where such failure was "corrected by the written plea agreement and the detailed in-court plea colloquy, both of which accurately stated [the petitioner's] potential sentence").

Here, Judge Hall reviewed the possible statutory penalties for the charge to which Petitioner was pleading guilty, and Petitioner affirmed that he understood them. (CR 111-302, doc. no. 78, pp. 16-17.) Judge Hall also reviewed the advisory nature of the sentencing guidelines, and emphasized that he—Judge Hall—would determine the final sentence. (Id. at 17-19.) Petitioner affirmed he understood how he would be sentenced,

and no one had made any promise, prediction, prophecy, or representation to him that he would receive any specific sentence. (Id. at 19.) In sum, even if his counsel's representation fell below the objective standard of reasonableness, Petitioner suffered no prejudice as a result, and therefore he fails to carry his heavy burden under the second prong of Strickland. Wilson, 245 F. App'x at 11-12; Hill, 474 U.S. at 59; Brooks, 719 F.3d at 1300.

### III. CONCLUSION

In sum, Petitioner's grounds alleging ineffective assistance of counsel at sentencing are barred by the collateral attack waiver, and his ground alleging ineffective assistance of counsel during plea negotiations is without merit. Therefore, Petitioner is not entitled to relief on any of the grounds for relief asserted in the § 2255 motion or his amendment. Accordingly, the Court **REPORTS** and **RECOMMENDS** that Respondent's motion to dismiss be **GRANTED** (doc. no. 7), that Petitioner's § 2255 motion be **DISMISSED**, and that this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 28th day of February, 2014, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE